1    **WO**

2

3

4

5

6                 IN THE UNITED STATES DISTRICT COURT

7                     FOR THE DISTRICT OF ARIZONA

8

9    Christine Marie Weyland McIntyre,          No. CV-12-08076-PHX-GMS

10                      Plaintiff,              **ORDER**

11   v.

12   Carolyn W. Colvin, Acting Commissioner
     of the Social Security Administration,

13                      Defendant.

14

15

16           Pending before the Court is the appeal of Plaintiff Christine Marie Weyland

17   McIntyre, which challenges the Social Security Administration's decision to deny

18   benefits. (Doc. 11.) For the reasons set forth below, the Court vacates that decision and

19   remands for further proceedings.

20                              **BACKGROUND**

21   **I.      Procedural Background**

22           McIntyre seeks disability insurance benefits for a closed period of disability

23   beginning on November 2, 2006 and ending on May 18, 2009. (Doc. 11 at 2.) On July 20,

24   2008, McIntyre applied for benefits, alleging a disability onset date of November 2, 2006.

25   (R. at 15.) McIntyre's date last insured ("DLI") for disability insurance benefits, and thus

26   the date on or before which she must have been disabled, was September 30, 2011. (*Id.*)

27   McIntyre's claim was denied both initially and upon reconsideration. (*Id.*) McIntyre then

28   appealed to an Administrative Law Judge ("ALJ"). (*Id.*) The ALJ conducted a hearing on

the matter on December 16, 2010. (*Id.*)

In evaluating whether McIntyre was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (R. at 16.) At step one, the ALJ determined that McIntyre had not engaged in substantial gainful activity since the alleged onset date. (R. at 17.) At step two, the ALJ determined that McIntyre suffered from the severe impairments of degenerative disc disease of the lumbar spine and cervical spine, status post cervical fusion surgery at C2-4, status post lumbar fusion surgery at L5-S1, depression, and headaches. (*Id.*) At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (R. at 18.)

At that point, the ALJ made a determination of McIntyre's residual functional

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotations omitted).

capacity ("RFC"),[2] concluding that McIntyre could perform less than the full range of light work as defined on 20 C.F.R. 404.1567(b), with lifting and carrying up to ten pounds frequently and twenty pounds occasionally, standing and walking up to two hours a day, standing to six hours a day with normal breaks, no climbing ladders, ropes or scaffolds but occasional climbing ramps and stairs and balancing, stooping and kneeling, no crawling, occasional bilateral reaching, including overhead and unprotected heights, with the mental capacity for at least simple, repetitive tasks. (R. at 19.) The ALJ thus determined at step four that McIntyre did not retain the RFC to perform her past relevant work as a credit analyst, dental assistant, receptionist, typist, or fast food cashier. (*Id.* at 22.) The ALJ therefore reached step five, determining that McIntyre could perform a significant number of other jobs in the national economy that met her RFC limitations. (*Id.*) Given this analysis, the ALJ concluded that McIntyre was not disabled. (*Id.* at 23.)

The Appeals Council declined to review the decision, making the ALJ's determination of non-disability the final decision of the Social Security Commissioner in the case. McIntyre filed this action on April 18, 2009, seeking review of the ALJ's denial of benefits.[3] (Doc. 1 at 1.) McIntyre alleges four grounds of error in the ALJ's decision: (1) the ALJ attributed greater weight to only selective portions of the medical records from McIntyre's treating psychiatrist, (2) the ALJ improperly rejected assessments from McIntyre's treating physician, (3) the ALJ relied on the opinion of a doctor whose license was suspended in another state, and (4) the ALJ rejected McIntyre's symptom testimony without any clear and convincing reasons for doing so. (Doc. 11 at 1–2.)

---

[2] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96-8p (July 2, 1996).

[3] McIntyre was authorized to file this action by 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

## II.      Factual Background

McIntyre was born on August 30, 1978, making her twenty-eight years old on the alleged disability onset date. (R. at 22, 41.) Prior to the alleged disability onset date, McIntyre had been involved in two car accidents in 2004 and 2005. (*Id.* at 45.) McIntyre subsequently underwent a series of surgeries, including two lumbar fusions in July 2005 and October 2008, a cervical fusion in December 2006, and the implantation of a spinal cord stimulator in March 2008. (*Id.* at 45–46.) However, problems arose with the implanted stimulator, and it had to be removed and re-implanted twice in June and October of 2008. (*Id.* at 46.)

McIntyre was treated by Dr. Patrick McNulty from November 2, 2006 to September 6, 2007. (*Id.* at 521–67.) Dr. McNulty performed the cervical fusion surgery on McIntyre and oversaw her recovery. (*Id.* at 559–67.) Though McIntyre was unable to work for some time after her surgery, Dr. McNulty approved her for part-time work by March 8, 2007. (*Id.* at 561–66.) He assessed that she should be able to work twenty-five to forty hours a week without lifting more than fifteen pounds. (*Id.* at 566.) His last evaluation of McIntyre reported that she was "doing well overall," "very happy," and "going back to work." (*Id.* at 567.)

At the same time that McIntyre was seeing Dr. McNulty, she was also seeing Dr. Brian Lemper. Dr. Lemper treated McIntyre from May 2004 to February 2009. (*Id.* at 1635.) Under Dr. Lemper's care, McIntyre was given a variety of treatments, including medication injections, nerve root blocks, and implantation of a spinal cord stimulator. (*Id.* at 827–28.) Dr. Lemper also recommended that McIntyre see a pain management therapist. (*Id.* at 57.) In August 2008, Dr. Lemper stated his opinion that, because of McIntyre's orthopedic spine conditions, she was "unable to maintain gainful employment" and that it was "questionable whether she ever [would] be able to do so." (*Id.* at 1224.) In November 2008, after McIntyre's last surgery, Dr. Lemper reported that McIntyre could not perform work of any kind because she was "unable to sit[,] stand[,] or concentrate." (*Id.* at 1183.)   By December 2008, however, Dr. Lemper stated that

McIntyre "reported good relief of her main presenting symptoms." (*Id.* at 1557–59.) Nevertheless, in February 2009, Dr. Lemper recommended against McIntyre resuming gainful employment. (*Id.* at 1635.)

At Dr. Lemper's behest, McIntyre began seeing Dr. David Hopper, a pain management therapist, in 2008. (*Id.* at 57.) Dr. Hopper's psychometric assessment of McIntyre in 2008 indicated that she was experiencing "substantially more depressive symptoms than the typical medical patient" and a "severe degree of pain." (*Id.* at 955–58.) His progress notes show that McIntyre's condition would vary; for example, McIntyre reported that the stimulator was working on June 2, 2008 and a positive attitude on July 17, 2008. (*Id.* at 1158–59.) In the following weeks, however, McIntyre exhibited frustration and increased anger, depression, and pain. (*Id.* at 1156–57.) Dr. Hopper also filled out a checklist ranking McIntyre's impairment in various work-related activities on a scale from none to severe. (*Id.* at 1618–19.) He ranked McIntyre's impairment of her ability to perform simple tasks as mild, but her impairment of her ability to perform repetitive tasks as moderately severe. (*Id.*)

In addition, McIntyre saw a number of examining physicians who evaluated her for her eligibility for state disability benefits. Dr. Charles Cooley examined her on November 5, 2008, and found that she was "capable of understanding, remembering, and carrying out simple one or two step instructions/tasks" and therefore "capable of resuming employment." (*Id.* at 1399–1403.) However, Dr. Cooley cautioned that "the medical/physical problems as reported by [McIntyre] could make it difficult for her to return to work at this time." (*Id.* at 1403.) Dr. Kathy Thomas examined McIntyre on June 27, 2009, and assessed that she "should be able to learn and perform work activities independently." (*Id.* at 1621–25.) However, Dr. Thomas expected "moderate problems with persistence" and warned that McIntyre "would likely have some difficulty completing tasks in a timely manner over a 40-hour workweek." (*Id.* at 1625.) Dr. John Prieve examined McIntyre on May 16, 2009. (*Id.* at 1606–11.) Dr. Prieve concluded that McIntyre could stand six to eight hours, walk less than two hours, and sit intermittently

for four hours during an eight-hour work day. (*Id.* at 1609.) Similarly, Dr. George Nickles, who examined McIntyre on September 17, 2008, opined that McIntyre could occasionally lift up to twenty pounds and frequently lift up to ten pounds, as well as stand, walk, or sit up to six hours in an eight-hour workday. (*Id.* at 1563–70.) Dr. Sally Skewis examined McIntyre on December 8, 2008, and concluded that while McIntyre suffered from multiple psychiatric disorders, (*id.* at 1404–17), she was not significantly limited or only moderately limited in her capacity to sustain various mental activities over a normal workday and workweek, (*id.* at 1571–74).

## DISCUSSION

### I.      Standard of Review

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

Harmless errors in the ALJ's decision do not warrant reversal. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006). "[T]he burden of showing that

an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009).

## II.   Analysis

McIntyre argues that the ALJ erred by: (1) selectively giving more weight to certain portions of Dr. Hopper's evaluation, (2) rejecting Dr. Lemper's analysis, (3) relying on the assessment of Dr. Prieve, who has been unlicensed in another state, and (4) rejecting McIntyre's testimony about her symptoms at the hearing. The Court will address each argument in turn.

### A.   Dr. Hopper

The ALJ's decision states that Dr. Hopper found that McIntyre "had no more than mild limitations performing simple, repetitive tasks." (R. at 21.) The ALJ stated that he gave greater weight to Dr. Hopper's assessment of McIntyre's ability to perform simple, repetitive tasks because of "its consistency with the greater objective record." (*Id.*) In fact, Dr. Hopper rated McIntyre's impairment on *simple* tasks as mild, but found that her impairment on *repetitive* tasks was moderately severe. (R. at 1618–19.)

In reviewing an ALJ's decision, a district court must rely on "the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). In addition, "[t]he medical opinion of a claimant's treating physician is entitled to special weight." *Walter v. Astrue*, No. CV-09-1016PHXGMS, 2010 WL 1511666 at *7 (D. Ariz. Apr. 15, 2010) (citing *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989)) (internal quotations omitted). The ALJ may not reject a treating physician's opinion "without providing specific and legitimate reasons supported by substantial evidence in the record." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (internal quotations omitted). In doing so, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence." *Walter*, 2010 WL 1511666 at *7 (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)).

The parties agree that Dr. Hopper was McIntyre's treating psychiatrist, and that his opinion is therefore accorded greater weight. McIntyre attacks the ALJ's decision for "ignor[ing] Dr. Hopper's limiting assessments" in many of the functional abilities listed on the work skills worksheet. (Doc. 11 at 14.) McIntyre asserts that the ALJ engaged in a "pick-and-choose analysis" of the assessment and rejected select portions of Dr. Hopper's analysis of McIntyre. (*Id.* at 14–15.) She argues that the ALJ gave greater weight to the opinions of the one-time examining physicians and that their assessments are not sufficient to justify the ALJ's rejection of Dr. Hopper's opinion. (*Id.* at 15.)

The ALJ's decision indicates that he gave greater weight only to the parts of Dr. Hopper's opinion that ranked McIntyre as having only a "mild" impairment on simple, repetitive tasks. As stated above, the ALJ is incorrect that Dr. Hopper ranked McIntyre as having only a mild impairment on repetitive tasks; Dr. Hopper in fact ranked McIntyre's impairment on repetitive tasks as moderately severe. (R. at 1618–19.) While Dr. Hopper rated a number of work-related activities as only mildly impaired by McIntyre's condition, he rated an equal number of activities as impaired to a moderately severe degree. (*Id.*) In addition, he found McIntyre's impairment to be moderate for five work-related activities. (*Id.*) Dr. Hopper ranked McIntyre's impairment as more severe than "mild" on the majority of work-related activities. Taken as a whole, a reasonable person would not accept the checklist (the only documentation of Dr. Hopper's opinion that the ALJ relied on) as adequate to support the ALJ's determination to credit only the parts of the checklist that ranked McIntyre's impairment as "mild." As such, there is no substantial evidence to support the ALJ's decision to give greater weight to only selective portions of Dr. Hopper's opinion.

In addition, when the vocational expert ("VE") was given a hypothetical encompassing all of Dr. Hopper's evaluations on McIntyre's impairments, the VE testified that there would be no jobs for McIntyre in the national economy. (R. at 73–74.) The ALJ did not discuss this hypothetical in his opinion, instead giving greater weight to the opinions of the one-time examining physicians who opined that McIntyre was subject

to fewer limitations than those assessed by Dr. Hopper. (R. at 21–22.) When the limitations suggested by these examining physicians were posed to the VE in a hypothetical, the VE testified that there were some jobs that would be available to McIntyre in the national economy, such as front desk activities or security guard positions. (R. at 70–73.) The ALJ appears to have relied primarily on this testimony in reaching his determination that McIntyre is not disabled. (R. at 22–23.) However, because Dr. Hopper was a treating physician, the ALJ should have either afforded his opinion greater weight than the opinions of non-treating physicians or set forth specific and legitimate reasons for discounting his opinion. *Orn*, 495 F.3d at 632. The ALJ did not set forth any reasons for giving the examining physicians' opinions greater weight, and in doing so committed error.

In response, the Commissioner points to a number of passages in the record indicating that "examinations consistently revealed favorable functional findings" regarding McIntyre's condition. (Doc. 14 at 15.) The Commissioner argues that these parts of the record constitute substantial evidence supporting the ALJ's decision. (*Id.*) The Commissioner's evidence constitutes "*post hoc* rationalizations" that might justify the ALJ's decision in retrospect, but the record and written decision do not show that the ALJ actually relied on any of this evidence. As such, it is improper for the Court to take this evidence into account in determining whether the ALJ properly rejected portions of Dr. Hopper's opinion. *Bray*, 554 F.3d at 1225. Furthermore, none of the evidence set forth by the Commissioner resolves the ALJ's failure to set forth specific and legitimate reasons for rejecting a treating physician's testimony.

The issue remains whether the ALJ's error in rejecting Dr. Hopper's opinion was harmless. As stated above, a district court may not vacate an ALJ's decision absent a showing that the ALJ's error was not harmless. Generally, errors are harmless where they are "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). Thus, for example, errors are harmless if the record

shows that "the ALJ would have reached the same result absent the error" or "it was clear [the errors] did not alter the ALJ's decision." *Id.*

Here, Dr. Hopper evaluated McIntyre as having significant limitations in many work-related activities. (R. at 1618–19.) If, in the absence of any specific and legitimate reason that is both accurate and sufficient to discount Dr. Hopper's evaluation about the claimant's ability to perform repetitive tasks, the ALJ had given adequate weight to Dr. Hopper's opinion, he would have devoted more attention to the VE's testimony that, given the limitations assessed by Dr. Hopper, McIntyre would be unable to find any jobs in the national economy, which ought to have significantly impacted the finding of non-disability. As such, the record does not "show that the ALJ would have reached the same result absent the error." *Molina*, 374 F.3d at 1115. The ALJ's error in discounting parts of Dr. Hopper's opinion was not harmless and warrants reversal of his decision.

## B. Dr. Lemper

The ALJ gave less weight to Dr. Lemper's opinion "based on its inconsistency with the greater objective record." (R. at 21.) In addition, the ALJ discredited Dr. Lemper's assessment that McIntyre could not return to work because "the claimant returned to work in May 2009, just a few months after Dr. Lemper asserted that she could not." (*Id.*)

Dr. Lemper treated McIntyre for four years, and, as stated above, "[t]he medical opinion of a claimant's treating physician is entitled to special weight." *Walter*, 2010 WL 1511666 at *7. McIntyre argues that the ALJ's decision should be reversed because the ALJ rejected Dr. Lemper's opinion as a treating physician "without providing specific and legitimate reasons supported by substantial evidence in the record." *Orn*, 495 F.3d at 632.

Here, the ALJ stated that he was giving Dr. Lemper's opinion less weight for two reasons: (1) that Dr. Lemper's opinion was inconsistent with the rest of the record, and (2) that McIntyre in fact returned to work shortly after Dr. Lemper said that she could not. The ALJ's first reason for discounting Dr. Lemper's opinion fails for lack of

specificity. *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (holding that the "ALJ must do more than offer his conclusions"). Though the Commissioner sets forth a slew of evidence in the record that he asserts is inconsistent with Dr. Lemper's opinion, the issue is that the ALJ failed to cite specifically to such evidence and explain why his conclusions, rather than the treating physician's, are correct. *See id.*

The ALJ's second reason for discounting Dr. Lemper's opinion is specific. The issue is whether it is legitimate and supported by substantial evidence. McIntyre does not dispute that she returned to work in May 2009, three months after Dr. Lemper recommended against resuming gainful employment. However, Dr. Lemper's recommendation against resuming work was specific to February 2009, the time that he issued the opinion. (R. at 1635) (letter from Dr. Lemper stating that he was "*currently* not recommending that [McIntyre] return to gainful employment") (emphasis added). That opinion, bound to the point in time at which it was issued, is not discredited by McIntyre's return to work three months later. In addition, McIntyre's return to work occurred outside of the closed period in which she seeks disability benefits. (R. at 15) (McIntyre's claim is for a closed period of disability ending on May 1, 2009, when she returned to work). McIntyre's work attempts *after* the closed period should have no effect on her treating physician's opinion of whether she was able to work *during* the closed period in which she claims to have been disabled.

The Commissioner offers a host of citations to the record which he claims constitute substantial evidence contradicting Dr. Lemper's opinion that McIntyre could work. (Doc. 14 at 14.) He also argues that the fact that McIntyre returned to work in January 2009 undermines Dr. Lemper's February 2009 opinion that she could not work. (*Id.*) However, the ALJ did not rely on any of this evidence; he offered only the two reasons discussed above to justify his rejection of Dr. Lemper's opinion. In reviewing the ALJ's decision, the district court should not consider "*post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray*, 554 F.3d at 1225. In addition, the Commissioner's assertion that McIntyre returned to work in January 2009

is incorrect. McIntyre testified that she moved to Arizona in January 2009, but that she did not begin work until May 2009, when her closed period of disability ended. (R. at 51.)

The ALJ offered no other reasons for discrediting Dr. Lemper's opinion. Because his rejection is not supported by specific, legitimate reasons supported by substantial evidence, he committed error in according less weight to Dr. Lemper's assessment. As such, the Court must determine whether this error was harmless.

Here, the ALJ refused to consider the testimony of McIntyre's doctor of four years, the longest period that she was treated continually by the same physician. The bulk of the record consists of medical records from Dr. Lemper. During the period of McIntyre's claimed period of disability, Dr. Lemper opined multiple times that she was unable to maintain gainful employment. (R. at 1183, 1224, 1635.) The ALJ's rejection of Dr. Lemper's opinion in support of his finding that McIntyre was not disabled cannot, therefore, be deemed "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115. The error was not harmless and warrants reversal of the ALJ's decision.

## C.    Dr. Prieve

McIntyre contends that the ALJ erred by relying on the opinion of Dr. John Prieve. (Doc. 11 at 19.) Dr. Prieve examined McIntyre on May 16, 2009 and concluded that she could work under certain, limited circumstances. (R. at 1609–11.) The parties agree that Dr. Prieve's license was suspended by the Massachusetts Board of Registration in Medicine on April 2, 2008, and remained suspended during the time that Dr. Prieve examined McIntyre. (Docs. 14 at 15; 11-1 at 1.)

McIntyre contends that reliance on any individual or entity whose license has been revoked or suspended by any state licensing theory is prohibited by the regulations. (Doc. 11 at 19) (citing 20 C.F.R. §404.1503a, which states that the Social Security Administration will not use in its program "any individual or entity . . . whose license to provide health care services is currently revoked or suspended by any State licensing

authority"). The Commissioner does not dispute this, but rather argues that the error did not prejudice McIntyre because the ALJ also relied on other opinions that "either pre-dated or expressly discounted Dr. Prieve's opinion." (Doc. 14 at 15.)

As discussed above, an error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (9th Cir. 2012). Here, the ALJ erred in relying on Dr. Prieve's opinion that McIntyre could work in limited circumstances. However, the ALJ also relied on the opinions of several other doctors that stated McIntyre could work under similarly limited circumstances. (R. at 22.) For example, Dr. Nichols, a state examining physician, assessed that McIntyre could frequently lift up to ten pounds, stand or walk up to six hours in an eight-hour workday, and sit up to six hours in an eight-hour workday. (R. at 1564.) Similarly, Dr. McNulty, who was one of McIntyre's treating physicians, opined that McIntyre could work twenty-five to forty hours a week so long as she did not lift more than fifteen pounds. (R. at 566.) This evidence shows that the ALJ would have reached the same result even if he had not improperly relied on Dr. Prieve's opinion. As such, this error does not merit reversal of his decision.

### D.    McIntyre's Testimony

The ALJ found that McIntyre's testimony regarding her symptoms was not credible to the extent that they conflicted with the RFC determined by the ALJ. (R. at 20.)

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . . Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (internal quotations omitted). In assessing the claimant's credibility, the ALJ may consider factors such as "(1) whether the claimant engages in daily activities inconsistent with the alleged symptoms [or] (2) whether the claimant takes medication or undergoes other treatment for the symptoms." *Id.* at 1040.

The legal standard governing claimant credibility is a matter of dispute between the parties. The Commissioner relies on *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (en banc), where the Ninth Circuit set out to "determine the appropriate standard for evaluating subjective complaints of pain in Social Security disability cases." (Doc. 14 at 19–20) (citing *Bunnell*, 947 F.2d at 342). The *Bunnell* Court opined that once there has been objective medical evidence of an underlying impairment, the ALJ must make specific findings, supported by the record, for why he rejected the claimant's testimony on the severity of the pain. *Id.* at 345–46. This is to ensure that the ALJ "did not 'arbitrarily discredit a claimant's testimony regarding pain.'" *Id.* (quoting *Elam v. R.R. Retirement Bd.*, 921 F.2d 1210, 1215 (9th Cir. 1991)). Thus, the Commissioner claims that the standard governing credibility is a specific finding standard, which it claims is more in line with the overall "substantial evidence" standard that governs these cases.

Many panels of the Ninth Circuit have, however, held that if there is objective medical evidence of an underlying impairment, "and there is no evidence of malingering, then the ALJ must give 'specific, clear and convincing reasons' in order to reject the claimant's testimony about the severity of the symptoms." *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)); *see also, e.g.*, *Lingenfelter*, 504 F.3d at 1036. The Commissioner claims that these cases have overruled the standard articulated in *Bunnell* in violation of the Ninth Circuit rule that only en banc panels can overrule existing precedent. (Doc. 14 at 20) (citing *United States v. Camper*, 66 F.3d 229, 232 (9th Cir. 1995)). That is not the case. *Bunnell* articulated a general standard for dealing with claimant testimony. The many subsequent cases have addressed a subset of cases where there is no evidence of claimant malingering. They have

articulated a "clear and convincing" standard for those situations. While the Commissioner is undoubtedly unhappy with that approach, this Court cannot sit in judgment of that standard, which is clearly the standard that governs these determinations in this circuit. Accordingly, the ALJ's reasons for rejecting McIntyre's testimony must be "clear and convincing."

Here, in the first step, the ALJ found that McIntyre's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. at 20.) However, he rejected her testimony in the second step. (*Id.*) While he found no evidence of malingering, he set out a number of reasons for rejecting McIntyre's testimony as not credible. For example, he pointed to the fact that McIntyre testified that her counseling and medication was effective at managing her depression. (R. at 20, 55.) He also noted that she lived in a two-story home and "negotiate[d] the stairs on a daily basis" and did "not regularly require an assistive device to ambulate." (R. at 20.) He also pointed to multiple parts of the record indicating that McIntyre's pain was under control due to the treatments she received. (*Id.*)

"[T]he mere fact that a plaintiff has carried on certain daily activities does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001)). To warrant an adverse credibility determination, the ALJ "must make specific findings relating to the daily activities and their transferability" to a work setting. *Id.* (internal quotations omitted). Here, while the ALJ noted that McIntyre engaged in daily activities that might be inconsistent with her symptom testimony, he did not make specific findings as to how those activities were transferable to a work setting. (R. at 20.) As such, his findings on McIntyre's daily activities were insufficient to justify the adverse credibility determination.

However, the ALJ also made specific findings that McIntyre's symptoms were effectively managed by her medications and treatments. These findings were supported by clear and convincing evidence in the record. McIntyre testified, for example, that her

medications managed her depression and anxiety "pretty well." (R. at 55.) McIntyre also testified that when her spinal cord stimulator was working, she was virtually pain-free. (R. at 50.) "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility." *Allen v. Comm'r of Soc. Sec.*, No. 11-16628, 2012 WL 5857269 at *2 (9th Cir. Nov. 19, 2012) (citing *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)). Thus, the ALJ relied on sufficient evidence to discredit McIntyre's testimony in the second step.

McIntyre argues that the ALJ erred because his "questioning at the hearing, and the recitation of activities in [his] decision, were in present tense, ignoring McIntyre's claim for a closed period of disability." (Doc. 20 at 19.) While McIntyre is correct in noting the verb tense of the questions in the transcript and in the ALJ's decision, this is not an error that warrants reversal. Indeed, McIntyre testified at the hearing that her limitations during the closed period were the same as her limitations at the time of the hearing. (R. at 66.) As such, McIntyre's testimony of her symptoms apparently would not have changed whether she was testifying about her condition in the present or during the closed period of disability, and the ALJ would not have altered his decision if he had asked questions in the past tense.

The ALJ did not err in making an adverse credibility finding against McIntyre regarding her testimony on her symptoms. The ALJ's decision will not be reversed on this ground.

## III.    Remedy

Having decided to vacate the ALJ's decision, the Court has the discretion to remand the case either for further proceedings or for an award of benefits. *See Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998). The rule in this Circuit is that the Court should:

> credit[] evidence and remand[] for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting [certain] evidence, (2) there are no outstanding issues that must be resolved before a determination of

> disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

Here, the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Drs. Hopper and Lemper, both of whom were McIntyre's treating physicians. However, the record shows that there are outstanding issues that must be resolved before a determination of disability can be made. As pointed out by the Commissioner, the record contains significant conflicting factual issues. (Doc. 14 at 25.) Even if the ALJ were to give the appropriate weight to Dr. Hopper's and Dr. Lemper's opinions, he must still balance their evaluations against the opinion of Dr. McNulty, another one of McIntyre's treating physicians, who concluded that McIntyre was capable of working twenty-five to forty hours a week. (*See* R. at 20.) In addition, the opinions of Dr. Hopper and Dr. Lemper must be weighed against McIntyre's own testimony that her depression and anxiety were manageable and that her physical pain was nonexistent when the spinal cord stimulator was functioning, as well as her part-time return to work in 2009. *See* 20 C.F.R. § 404.1571 (stating that even if work does not rise to the level of substantial gainful activity, it may show that the claimant is capable of doing more work than she claims).

Thus, it is not "clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited," and there remain "outstanding issues that must be resolved before a determination of disability can be made." *Smolen*, 80 F.3d at 1292. Under these circumstances, the Court will remand for further proceedings.

## CONCLUSION

The ALJ erred in rejecting the opinions of McIntyre's treating physicians without setting forth specific and legitimate reasons for doing so. In addition, the ALJ's decision to give greater weight only to a specific portion of Dr. Hopper's opinion was not supported by substantial evidence.

1    **IT IS THEREFORE ORDERED** that the ALJ's decision is **VACATED**.

2    **IT IS FURTHER ORDERED** that this case is **REMANDED** for further

3  proceedings

4    Dated this 3rd day of April, 2013.

5

6

7    _____
     G. Murray Snow

8    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28